UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN A. MCMEANS,

               Plaintiff,                     Case No. 20-10890

                                     Paul D. Borman
v.                                   United States District Judge

COMMISSIONER OF              David R. Grand
SOCIAL SECURITY,           United States Magistrate Judge

                       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 12)**

Plaintiff Brian McMeans ("McMeans") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 12), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.**     **RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that McMeans is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 12**) be **GRANTED**, McMeans' Motion for Summary

Judgment (**ECF No. 11**) be **DENIED** and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

McMeans protectively filed applications for DIB and SSI benefits on November 17, 2016  (PageID.229, 231.)[1]  McMeans was 45 years old at the time of this application, and at 5'8'' weighed approximately 230 pounds.  (PageID.114.)  He did not complete high school, but has his GED.  (PageID.126.)  McMeans previously worked in sheet metal manufacturing and construction.  (PageID.125.)  He also worked in the United States Navy.  (PageID.445.)  He currently lives with his mother, who provides care and transportation.  (PageID.42-45.)  McMeans's alleged disabling conditions include lumbar and cervical back issues, bipolar depression, and paranoia.  (PageID.115.)

On November 17, 2016, McMeans filed applications for SSI and DIB benefits, alleging disability beginning on January 1, 2013.  (PageID.229, 233.)  The Social Security Administration denied McMeans' applications on July 18, 2017.   (PageID.140-41.)  McMeans filed a request for an administrative hearing, which was held on September 12, 2018, before ALJ Virginia Herring.  (PageID.71.)  McMeans, who was represented by attorney Mark Aiello, testified at the hearing as did vocational expert ("VE") Pauline McEachin.  (*Id.*)  On January 3, 2019, the ALJ issued a written decision finding McMeans not disabled.  (PageID.51-70.)  On February 10, 2020, the Appeals Council denied review.

---

[1] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 9.

(PageID.36.)  McMeans filed for judicial review of the final decision on April 7, 2020. (ECF No. 1.)

## B.    Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

3

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.      The ALJ's Findings

At Step One, the ALJ found that McMeans had not engaged in substantial gainful activity since January 1, 2013.  (PageID.56.)  At Step Two, the ALJ found that McMeans had the following severe impairments:  "degenerative disc disease of the cervical spine with bilateral foraminal stenosis, degenerative disc disease of the lumbar spine status post posterior fusion at L5-S1, anxiety, and depression."  (PageID.57-58.)  At Step Three, the ALJ found that McMeans' impairments did not meet or medically equal one of the impairments listed in the regulations.  (PageID.57-59.)

The ALJ then assessed McMeans' residual functional capacity ("RFC"), concluding that McMeans was capable of performing light work as defined by 20 C.F.R. § 416.967(b) with the following exceptions:

> [H]e may occasionally push or pull.  He must be able to change his position between sitting and standing every 15 minutes or more as needed and will remain at the workstation while doing so.  He can occasionally climb stairs or ramps, but can never climb ladders, ropes, or scaffolds.  He may occasionally balance or stoop, but can never crouch or crawl.  He can never perform overhead work bilaterally, but can frequently bilaterally handle and finger.  He must avoid environments with extreme temperatures, vibrating tools, dangerous machinery, or unprotected heights.  He is limited to simple, routine

4

tasks.

(PageID.59.)

At Step Four, the ALJ found that McMeans was capable of performing his past relevant work as an inspector or machine fabricator operator. (PageID.64.) At Step Five, the ALJ stated, based in part on the VE's testimony, that McMeans was also capable of performing a significant number of other jobs in the national economy. (PageID.65.) As a result, the ALJ concluded that McMeans was not disabled under the Act. (PageID.66.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**E.    Analysis**

McMeans argues that the ALJ's RFC for light work with additional limitations is not supported by substantial evidence. (ECF No. 11, PageID.636-41.) In support of this argument, McMeans asserts that "the ALJ only considered the findings of Dr. Easton," who performed a surgery on McMeans in 1999. (*Id.*, PageID.636.) McMeans also maintains that the ALJ "did not consider the effect [his] worsening neck issues and cervical

fusion had on his already diminished RFC." (*Id.*)  Finally, McMeans contends that the ALJ "only considered the physical evidence in making a finding of not disabled.  The decision does not discuss the mental impairments Mr. McMeans deals with other than a mention that he has mental issues but they do not meet the listing." (*Id.*, PageID.637.)

As discussed below, McMeans is simply wrong about each of these arguments; the ALJ did not consider "only" the findings of Dr. Easton, did not fail to consider the impact of McMeans' neck issues and cervical fusion, and did not fail to discuss McMeans' mental impairments in fashioning an RFC.  Moreover, the Court has thoroughly reviewed the transcript, including McMeans' medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations, and finds that while the record contains some significant evidence favorable to McMeans, the ALJ's decision as a whole is supported by substantial evidence.  Accordingly, the ALJ's decision should be affirmed. *Cutlip*, 25 F.3d at 286.

### 1.    The ALJ's Physical RFC is Supported by Substantial Evidence

A claimant's RFC is defined as "the maximum degree to which he retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).[2] "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger*

---

[2] *See also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

*v. Comm'r of Soc. Sec.*, 476 Fed.Appx. 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)).  The ALJ must also take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

McMeans' main argument is that the ALJ's RFC for light work with additional limitations is not supported by substantial evidence.  In support of that argument, McMeans contends, "In finding [he is] capable of a light RFC, the ALJ only considered the findings of Dr. Easton."  (ECF No. 11, PageID.636.)  But this assertion by McMeans is clearly wrong; a review of the ALJ's decision reveals that she thoroughly and evenly discussed the extensive medical record as well as McMeans' subjective complaints.  (PageID.59-62.)

First, ALJ Herring noted McMeans' "history of lumbar fusion surgery," dating back to July 1999.  (PageID.61.)  Thus, she was aware of McMeans' history of back issues.  She also discussed McMeans' undated Disability Report and his January 23, 2017 Function Report.  (PageID.60, 254-63, 276-83.)

Although McMeans alleges a disability onset date of January 1, 2013, the first medical records in the transcript following that date relate to McMeans' August 2014 visits to St. Joseph Medical Center.  (PageID.315-17.)[3]  The ALJ discussed those records in detail, noting that McMeans presented with complaints of intermittent neck pain at "a level

---

[3] Moreover, it appears that McMeans sought treatment at that time not due to a longstanding issue, but because, a few weeks earlier (on July 28, 2014), he had "bent down to pick up some sticks and developed sudden neck pain along with numbness and tingling."  (PageID.316.)  That is about 18 months *after* his alleged disability onset date.

of 10 on a scale of 0 to 10," with reported pain, numbness, and tingling in his shoulders and (sometimes) arms. (PageID.60.) She also noted that McMeans' neck was "very stiff and had a minimal range of motion," and that he had "moderate tenderness on palpation of his neck, which increased with movement." (*Id.*) The ALJ noted that McMeans returned a few weeks later, indicating his pain was worse. (*Id.*) The ALJ also noted that records from that time mentioned a cervical spine MRI (which was not in the record) showing a disc protrusion at C5-7. (*Id.*)

The ALJ noted that September 2015 cervical spine x-rays showed disc space narrowing that was "consistent with radicular symptoms," and that a month later he was prescribed Norco and prednisone for pain. (PageID.60, 315, 333.) She noted that McMeans' November 2015 cervical spine MRI showed multilevel degenerative changes (PageID.60, 389), leading to several cervical spine injections and cervical medial branch blocks. (PageID.61, 319, 323-236.) She also noted that another MRI showed degenerative disc changes throughout the cervical spine, including foraminal stenosis that was moderately severe bilaterally at C4-C5, severe bilaterally at C5-C6, and severe on the right side at C7-T1. (PageID.61, 387-388). She noted, however, that he had no significant central canal stenosis. (*Id.*)

The ALJ noted that following a January 2017 surgical evaluation with Lawrence Rapp, M.D., which included additional x-rays showing advanced degenerative disc disease at C5-C7, McMeans underwent a cervical fusion surgery. (PageID.61, 501-504.) The ALJ noted that by March 2017, McMeans reported that although he had some soreness in his neck, his arm pain had resolved. (PageID.61, 468.) The ALJ also noted that records

9

indicated McMeans was "doing well" and was told to return in six weeks for follow-up. (PageID.61, 468 ("Patient states that overall he is feeling much better than pre-op.")  The ALJ noted that by April, McMeans reported that he was doing "much better" than he was before the surgery, though he still did experience some pain and decreased range of motion in his spine.  (PageID.61, 467.)  The ALJ noted that McMeans was then referred for physical therapy, which he reported had "helped him significantly."  (PageID.61, 467, 519 ("Patient said overall he is doing much better.  Physical therapy was very helpful."))  Importantly, the ALJ noted that "[o]n examination, [McMeans] had no tenderness to palpation, and no motor deficits," and that as a result, he was instructed to return on an "as-needed basis."  (PageID.61, 519.)

The ALJ then evenly summarized this evidence, explaining, "[McMeans] had severe cervical pain and objective impairments which failed conservative treatment, but when [he] eventually had surgery and follow-up with physical therapy, his condition improved markedly."  (PageID.61.)

The ALJ then went on to note McMeans' earlier surgery with Dr. Easton in 1999, and that post-surgery, Dr. Easton explained:

> [McMeans] understands that he will always have permanent restrictions, including no lifting greater than 10 or 20 pounds and no twisting, bending, pushing, pulling.  No sitting greater than 30 minutes and that he may have permanent numbness, tingling and weakness in his lower extremities related to his injury in his back.

(PageID.518.)

The ALJ explained, "[e]ven though Dr. Easton's opinion is considerably dated, [I] give[] it significant weight, as it remained consistent with [McMeans'] medical evidence

of record, particularly his post-physical therapy functional abilities in 2018." (PageID.62.) In terms of that time period, the ALJ noted that in January 2018, McMeans sought treatment for back pain radiating into this legs and feet. (PageID.62, 594.) He was diagnosed with low back pain and referred for physical therapy. (PageID.595.) The ALJ appropriately noted that this physical therapy significantly helped alleviate McMeans' symptoms, explaining, "[a]fter a course of physical therapy from January to February 2018, [McMeans] described his pain as about a 2 or 3 at worst, and stated that it was noticeable about 10 to 20 percent of the day. [McMeans] reported improved sleep, increased mobility, and increased ability to perform his activities of daily living. [McMeans] denied any problems with bed mobility or transfers, and stated that he complied with his home exercise program." (PageID.62, 597.) Importantly, the ALJ also accurately noted, "Specific functional improvements included a standing tolerance of 45 minutes to 1 hour; a lifting tolerance of 30 pounds, which could be carried 100 feet; the ability to retrieve objects from the floor; being able to perform light pushing and pulling, and lifting overhead; and the ability to return to his favorite hobby of painting."[4] (PageID.62, 597.) The medical record notes that McMeans had met his goal of being able to "perform his daily activities without any limitations . . ." (PageID.597; *see also* PageID.599.)

---

[4] In his summary judgment motion, McMeans argues that his neck issues "severely limit[] his ability to drive, shave, comb his hair, and do any activity that requires gripping an object – He cannot even paint . . ." (ECF No. 11, PageID.637.) But McMeans' argument simply ignores that the ALJ specifically cited record evidence to the contrary. Again, the ALJ specifically noted a record stating McMeans had "been able to return to his hobby of painting." (PageID.62, 597.) The ALJ also appropriately noted that in July 2017, despite having "extreme range of motion deficit in his neck," McMeans was found to have "grip strength of 5 out of 5 bilaterally, and full dexterity in his hands." (PageID.62, 477-78.) Similarly, in January 2017, McMeans was found to have "no sensory deficits" in his upper extremities. (PageID.470.)

As she had done earlier in her decision, the ALJ evenly summarized this evidence, explaining, "Thus, [McMeans] had a history of objective impairments in his lumbar spine which necessitated surgical intervention, plus a recent flare-up of pain which was managed successfully through conservative treatment." (PageID.62.)

In addition to Dr. Easton's opinion, the ALJ also gave "significant weight" to the opinion of medical consultant Ashok Sachdev, M.D., who opined in July 2017 that McMeans could perform light work with occasional postural activities; occasional ramps and stairs; no ladders, ropes, or scaffolds; and no exposure to extreme cold or vibration. (PageID.64, 114-127.) In doing so, the ALJ specifically found that Dr. Sachdev's opinion was "consistent with [McMeans'] history of spinal surgeries and continued pain . . ." (*Id.*) She also stated that "he must have the opportunity to alternate between sitting and standing every 15 minutes, which is also consistent with Dr. Eastman's [sic] opinion." (*Id.*) The ALJ departed from Dr. Easton's opinion, finding that McMeans could occasionally push and pull. (PageID.62, 64.) That finding is consistent with the evidence the ALJ cited that McMeans was "able to perform light pushing and pulling." (PageID.62, 597.) Similarly, the limitation to frequent handling and fingering is consistent with McMeans' more recent physical therapy evaluations discussed above. (PageID.62, 470, 597) So, too, is the ALJ's decision not to limit McMeans' bending or twisting, as McMeans' February 22, 2018 PT Discharge Evaluation states, "Repetitive bending and twisting activities, standing tolerance is 45 minutes to 1 hour . . ." (PageID.597.) Finally, because McMeans exhibited "moderate difficulty getting on and off the examination table and with heel and toe walking, and severe difficulty squatting and hopping," the ALJ found he could never climb ladders,

12

ropes and scaffolds, that due to his continued paraspinal tenderness, McMeans could not perform overhead work, and that due to McMeans' history of surgeries, he must avoid exposure to extreme temperatures, vibrating tools, dangerous machinery, and unprotected heights. (PageID.62-63.)

In short, while McMeans points to evidence in the record that is consistent with him experiencing certain symptoms and physical limitations, the physical portion of the RFC adopted by the ALJ is supported by substantial evidence in the record. *Cutlip*, 25 F.3d at 286.

### 2.    *The ALJ's Mental RFC is Supported by Substantial Evidence*

McMeans also claims that the ALJ's decision "does not discuss the mental impairments Mr. McMeans deals with other than a mention that he has mental issues but they do not meet the listing." (ECF No. 11, PageID.637.) This statement is inaccurate. The ALJ's decision makes clear that she considered both McMeans' mental health treatment and testimony about his mental impairments, including his complaints of severe moodiness, social isolation, brief attention span, and inability to get along with authority figures, handle stress, interact with others, and focus. (PageID.63-64).

In addressing McMeans' extensive mental health treatment, the ALJ began by noting his diagnosis of depression by Richard D. Cohen, D.O. in August of 2015. (PageID.63.) This was more than 30 months after McMeans' alleged disability onset date. She stated that Dr. Cohen "included a diagnosis of major depression, recurrent," but noted that he "had a normal mental status examination that day and did not receive any prescriptions or any other mental health interventions." (PageID.63, 382 (noting normal

judgment and insight, orientation, recent and remote memory, and mood and affect.))  She

also noted McMeans' September 2015 prescription for Effexor (PageID.63, 378); January

and February 2016 prescriptions for Cymbalta and Xanax (PageID.369, 372); and March

2016 prescription for Lamictal (PageID.365-366).  The ALJ noted that the Lamictal helped

McMeans, citing to his own reports of "significant improvement with his usual agitation"

and improved sleep.  (PageID.63, 362-63 (noting that McMeans' agitation was "much

better and no issues with rage" and that he had a normal mood and affect, and full

orientation.))

The ALJ also discussed McMeans' most serious mental health episode, a July 2016

mental health breakdown and involuntary commitment (PageID.339-345).   The ALJ

explained:

> In July 2016, the claimant presented to the emergency department of
> Bronson Hospital while in police custody following a confrontation
> in his vehicle in which the claimant voiced suicide threats.  At the
> hospital, the claimant had an anxious and labile mood, and a anxious
> affect.  He had rapid and pressured speech, and was agitated and
> aggressive.  He expressed impulsivity, inappropriate judgment, and
> suicidal ideation.  While waiting for inpatient placement at a mental
> health facility, the claimant escaped from the emergency department
> and was brought back by the police.  The claimant received 1 mg of
> Ativan on two occasions to reduce agitation and aggressive behavior
> toward hospital staff.   He received diagnoses of paranoia and
> agitation.  He was eventually transferred to the inpatient facility at
> Fieldstone.

(PageID.63.)

While the ALJ noted the seriousness of this episode, she also noted that following

his brief hospitalization, McMeans underwent a psychological evaluation at Training and

Treatment Innovations ("TTI").  (*Id.*)  The ALJ noted that that a Limited License Social

14

Worker, Jill Smith, found McMeans had "a cooperative attitude, euthymic mood, normal affect, normal speech and intact language, an intact memory and fund of knowledge, no hallucinations, normal thought process and thought contents . . . adequate impulse control and judgment, and normal [] concentration." (PageID.63, 445-55.) And, the ALJ noted that shortly thereafter, McMeans reported feeling better after breaking up with his girlfriend, and that he had been taken off his meds. (PageID.63, 359 ("thinks breaking up with girlfriend did 'worlds of good' . . . neck pain and spasm [] better with less stress in life."))[5] The ALJ also considered a January 18, 2017 psychological evaluation showing that McMeans "presented with constricted affect, pressured speech, hyperactive psychomotor activity, flight of ideas, assault ideation, impaired judgment, adequate concentration and impulse control." (PageID.64, 458-65.) However, no functional limitations were imposed, and McMeans was instructed to see his case manager monthly and the evaluator every 1-3 months depending on how McMeans was doing. (PageID.465.) Moreover, when McMeans saw a doctor a few days later (January 23, 2017) for his neck and arm pain, he was found to be alert and fully oriented, with clear speech and overall "mentally clear." (PageID.470.)

The ALJ also evaluated the medical opinion evidence in a manner favorable to McMeans; whereas Dr. Robert Gerl, Ph.D. found that McMeans' mental impairments were "non-severe," the ALJ disagreed, and gave Dr. Gerl's opinion little weight:

> The undersigned gives this opinion little weight as the claimant has
> persistently complained of mental health impairments that would have

---

[5] An evaluation performed on this date indicates that McMeans had normal mood and affect, was fully oriented, lucid and well-behaved. (PageID.359.)

> a more than minimal impact on his ability to function in the workplace, including difficulty with concentration and problems controlling his anger; the claimant also sought and received treatment for those conditions.

(*Id.*)(emphasis added).

Ultimately, the ALJ accounted for McMeans' mental impairments by limiting him to simple and repetitive work. (PageID.64). "[T]here is no bright-line rule" regarding concentration limitations, and "[t]he ultimate question is whether substantial evidence supports the ALJ's choice of limitations in the RFC assessment and corresponding hypothetical." *Taylor v. Comm. Soc. Sec.*, No. 10-12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011), adopted by 2011 WL 2682892 (E.D. Mich. July 11, 2011); *see Summers v. Comm'r of Soc. Sec.*, No. 15-10550, 2016 WL 3769377, at *7 (E.D. Mich. June 2, 2016); *Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *16 (E.D. Mich. Mar. 31, 2014). *Barnes v. Comm'r of Soc. Sec.*, No. 12-15256, 2013 WL 6328835, at *14 (E.D. Mich. Dec. 5, 2013) (citing *Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001)).

In short, although McMeans endured traumatic events both as a child an as an adult, and continues to experience some ongoing[6] mental health challenges, the foregoing

---

[6] The Court notes that at the hearing, McMeans inappropriately voiced his displeasure with how long it would take to the ALJ to issue her written decision:

> CLMT:    So, what if I go kill some heroin addicts because they're the ones I think are clogging up the system?  They chose to do the shit;  it's taking me –
>
> ALJ:       You can't –
> ATTY:     Brian, Brian, Brian –

16

constitutes substantial evidence in support of the RFC limitations imposed by the ALJ. Moreover, McMeans does not point to any medical record in which a doctor or other mental health professional imposed additional or different mental RFC limitations for him.

## III.   CONCLUSION

For the reasons set forth above, the Court finds that the Administrative Law Judge's conclusion that McMeans is not disabled under the Act is supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**ECF No. 12**) be **GRANTED**, McMeans' Motion for Summary Judgment (**ECF No. 11**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.


Dated: July 6, 2021                                    s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                                          United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D.

---

| | |
|---|---|
| ALJ: | You got to – |
| CLMT: | -- I'm going to be hung up because – |
| ALJ: | You got to stop.  . . . |

(PageID.108.)

McMeans ceased this behavior and the hearing ended shortly thereafter. The ALJ was not required to specifically discuss this outburst to show that she considered it. *Kornecky*, 167 F. App'x at 508. Obviously, the ALJ was aware of it, and this one incident does not so outweigh the other evidence discussed above such that a different result is required.

Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 6, 2021.

s/Eddrey Butts
EDDREY BUTTS
Case Manager